Case number 3-18-0346, Ferrari v. Village of Bollingbrook, Amponsah v. Village of Bollingbrook, Appellant Michael Leonard v. Village of Bollingbrook, Appellant Kenneth Fuller Mr. Leonard, you may proceed. Good afternoon, Mrs. Court. Michael Leonard on behalf of the appellants in this matter. They were here appealing the trial court's ruling which granted summary judgment in favor of the Village of Bollingbrook. Finding that the statute of limitations barred the taking of claims brought by the plaintiffs. And the court erred. In essence, and very simply, the statute of limitations cannot begin to run until a cause of action accrues. The lack of a law across the board, no matter what type of claim or case we're talking about. In this case, the plaintiffs were never contending that a taking occurred in the 1970s, or the 1980s, or the 1990s, or even in 2013. Their claim is very specific and clear that a taking did not occur and the statute of limitations did not begin to run until December of 2015 when a new runway was opened at Crowe Airport causing a taking. No one contended there was a taking prior to that time. No statute of limitations began to run until that time. And if there had been some other taking in the 70s or 80s, this was a different app. This was a large-scale project, a $6 million project that widened the runway substantially, raised it, elevated it, and moved it over to the west. But what's most important is... And moved it further away from your clients' homes? Some of them, yes. But the point is, the net result of that was undisputed testimony that it caused a tremendous increase in flights, a tremendous lowering of the flights above their homes 50 to 100 feet, helicopters, larger planes, much greater frequency and duration of the planes, and also more night flights. And one of the additions... You say that was undisputed? Well, yes, Your Honor, because the only testimony on the subject of takings was offered by four people. The three plaintiffs threw their affidavits, which was unrebutted, and they weren't even deposed. They testified to all the impacts upon them and their property, which was the taking. The only thing offered in response, the only evidence, was a testimony of Mr. Capallo, who used to be the owner of the airport and now is the manager. What did he testify to? He testified at deposition, and they testified by way of affidavit. In the appellee's brief, they seem to have some confusion of finding in the record what Mr. Capallo testified to. But from Judge Rossi, which is in the record at pages C13 and C14, after we briefed and put in detail what Mr. Capallo's testimony was and submitted to court, I then went through all of Mr. Capallo's testimony at pages 13 and 14. Of course, at that time, the appellee's defendants did not contend that we were misciting Mr. Capallo's testimony or that we were wrong or that it was vague or unfair. And what Mr. Capallo testified to, quite specifically, is in the record at pages C119 to 122. And what he says is very striking. In essence, that he's never been to any of the plaintiff's homes, either before or after the runway opened, so he's never been positioned to analyze whether things changed or not. He has no factual basis to testify about whether the frequency of the flights over their property or the height or the night flights changed in any way whatsoever. He couldn't give an opinion on any factual thing about the new runway and how it impacted these folks. And that's at pages C19 to C122, where he testifies across examinations in depth. What does he say in his affidavit, Your Honors, when they come on summary judgment? Nothing to rebut any of his prior testimony, which had no factual knowledge, including his admission that he knew of no documents in the world that would tell us whether duration, frequency, height, or any other factor changed when the runway opened. What does he say in summary judgment? Just one thing different. He says, well, I looked at the data from fuel sales, and because I looked at the data from fuel sales, I concur that really nothing's changed. That doesn't create genuineness or material fact to what the plaintiff's testified to, which was wholly unrebutted. That's the one fact that was offered that was due to rebut the testimony by the plaintiffs. And so their testimony that in taking occurred is at best for the defendants a question of fact to pose one fact against their unrebutted testimony. In addition, Your Honors, so there was no taking until December of 2015. The alternate arguments which we just covered that were raised by the defendants were rejected by Judge Ross is he found there were genuine issues of material fact on whether or not there was a taking. We agree that he was right on that. They re-raised them in appeal in the hopes that you'll, if you don't find the statute of limitations argument compelling, that you'll find that there was no taking. But as we said, there's no evidentiary basis in the record to make that finding that Judge Ross was wrong. And then finally, they raised again a third issue, which they also raised in summary judgment, and the argument in summary judgment, the third argument was, well, gee, if the statute of limitations doesn't work, and if you find that there was a taking or there was a genuine issue, it's our position from the defendant's standpoint that there were no damages suffered and that we haven't provided evidence of damages. But we did. We had an expert witness, Mr. Rothbard, whose report is attached in the record. It was considered by Judge Ross. It's in this record at 189-207. And so what they did at the trial board, they attacked his credentials. They said, well, he's not a licensed appraiser. He doesn't need to be a licensed appraiser. The case law is current in Illinois. To be an expert, it could be by experience, qualifications, or experience over the years. He's a licensed real estate agent. He's been doing commercial and residential real estate transactions for a couple of decades. He's a law professor on the subject of real estate, and he put forth in detail all of his credentials. He's been qualified as an expert witness in other cases, and in this case he gave a report on damages. Now, did he testify? No, he didn't. Is he under oath? His report? Yeah, these opinions of his. I don't care how they come in. They're disclosed as an expert witness. That's how his opinion was disclosed. He was never deposed by defendants, and so his opinions were that he made a careful analysis of the area of the plaintiff's zone that's been impacted by the runway. He compared that to the sales data from all of the things that are used by appraisers and other professionals, and he found that the plaintiff's zone showed a substantial reduction in value in that little area impacted by the new runway compared to the whole of the city of Williamsburg. In addition, Your Honors, we also offered the testimony of various plaintiffs who testified in their interrogatory responses that they believed there was a diminution in the value of the home, and they gave their own estimates on that. Because the evidence was in record from both the expert Mr. Rothbard and the plaintiffs, Judge Rossi concurred that there were, at best, genuineness as a material fact, that the arguments were to the weight and the credibility of the witnesses, and for that reason, it was not going to grant summary judgment in favor of the defendants. So the only issue to be ruled out was the statute of limitations. And just circling back the statute of limitations for one minute, the argument is that the statute of limitations began to run in the 1970s. It can't begin to run until it's a taking. Under their theory, you can take helicopters, bring them out to the premises of these people, and have them essentially in their backyards hovering about their houses 24 hours a day. And there would be no taking according to them because the taking occurred in the 1970s. Or, if you were to buy their argument, for instance, in a taking of a water case, for example, when this would be included in the case law, if the municipality put together a reservoir with a million gallons of water to put in the middle of an airport, not harming anybody, there's no taking by them doing that. The mere danger that the water might flow up to them is not a taking. But some day later, they decided, we're going to put all the water with millions of gallons on this house, we're going to open this one gate, and we're going to flood this house, because according to this theory, the taking occurred 20 years ago when we put the reservoir there. That's not the law. The law is there has to be a substantial, significant event based by the Illinois Supreme Court case law and this state court case law that constitutes a taking, which then causes such limitations. So for those reasons, we ask that you reverse speculosity on the issue of such limitations and deny your term of judgment and send this case back for trial. Thank you, Mr. Leonard. Mr. Florey? Pardon me? Good afternoon, Your Honors. The Supreme Court Counsel. My name is Ken Florey. I'm the attorney for Hilton Boland Brook. Let's talk a little bit of background. We haven't heard much about the airport. The Cobb Airport was built in the 50s. It started as a gas runway for recreational use. There was no air traffic control complex. This is a neighborhood airport, like many in the Illinois area. In the 70s, the grass runway was replaced with asphalt. At that time, again, there was no air traffic control tower and recreational use for the primary users. In 2004, the building acquired the airport, purchased it outright from Mr. DeCarlo, as we have heard. In 2015, the runway was deemed for repairs. The FAA and the Illinois Department of Transportation saw this process, and the runway was rebuilt to make it safer for airplanes and for the residents in the neighborhood. Again, at that time and at no time, there was still no air traffic control tower. It's a recreational user airport, and after the renovations, the types of planes have not changed that are allowed to use this airport or the number of flights that are allowed to use this airport have not changed due to the repairs of the runway. The FAA did require certain changes to the runway. They required it when all of these actually improved the conditions for the planes. The planes that are subject to this appeal were clearly improved. They were improved because the runway was shortened by 2 feet. It was raised by 7 to 8 feet off the ground. That means when planes are coming in for landing or taking off, they're higher off the ground, higher away from any of the houses, but not the plane's houses. Is there evidence of that in the record? There's evidence in the record that, by Mr. DeCarlo, yes, that the raising of the runway brought the landings in higher and the takeoffs in higher. The runway significantly was moved 75 feet to the west, further away from these plaintiff's homes. So for these plaintiffs, there's a significant question of whether or not even they qualify as a take-in because one of the requirements for the take-in is planes flying over your property. We're here because the plane is flying an inverse condemnation claim. And the court, we had limited discovery. The discovery was not closed. But during the process of discovery, the village decided that there was enough evidence to support three arguments that the statute of limitations barred the claim by these plaintiffs, that there was not a take-in whatsoever, and even if there were a take-in, plaintiffs, with the close of expert discovery, could not produce any evidence as to the evidence. They did not hire an appraiser. The only appraisals were from the appraisers hired by the village as required by the FAA and the Illinois Department of Transportation and an appraisal by one of the plaintiffs, the nobles, when they refinanced their house. And that's significant because that appraiser, who is a licensed appraiser, who is qualified to give a value, unlike the expert cited by counsel, who gave no opinion of value in his report. But the appraiser that did value the property, after the renovations of the airport, stated that air traffic is not constant and of small aircraft. The proximity to the airport will not have an adverse effect on the marketability of neighboring properties. The airport was typical for the neighborhood and well accepted. When Judge Rossi considered all this information, and I think counsel was being a little creative with his characterization of Judge Rossi's analysis, but Judge Rossi settled on one issue that was that the statute of limitations had expired. Judge Rossi looked at the case law. The question is, did the renovation of the runway create a cause of action that had existed, if at all, back when the homes were built? So let's go through the history again. The airport was built in the 50s, the homes were built in the 90s. So the airport was there for almost half a century before the homes were constructed. The homes were built knowing that they were being constructed around it. I imagine most of the people bought a house there because they either did not bother them or they actually liked being near the airport. So Judge Rossi viewed that this criteria, did this renovation of the runway create a new cause of action that would be actionable? Was there egregious interference from the United States Supreme Court standard? Was the action in the new runway so severe as to amount to a practical destruction or substantial impairment of private property? One of the many, many O'Hare Airport cases. Or a similar overflight case, Griggs v. Allegheny, was the change undesirable and unbearable for residential use. That's the standard. Judge Rossi looked at those standards and said, there is no way rebuilding the airport runway because of the necessary repairs, and particularly moving it away from these plans even further, improving their situation in relation to the old runway, there's no way that that action of reconstruction of the runway created a new cause of action whatsoever. And that's assuming there was a taking. The brief says that Judge Rossi said he declared a taking. Collins just said he did not declare a taking. I'm not sure which position they're taking. Under the Eminent Domain Act, to prove an inverse condemnation, you must prove the eminence. The damage that it finds is a change in value of fair market value. You literally, you must have an appraiser that determines, here's what the value of the house was before, in this case the renovation of the runway, here's the value afterwards. There are no appraisals presented by the planners. The only appraisals, again, were hired by the village as part of the FAA, the Department of Transportation, related to minimal change in value. The trial court didn't make any findings, though, on damages. Didn't he avoid that issue? I'm sorry? The trial court avoided the issue of damages. Correct. The trial court only ruled on statutes and limitations, but we're arguing today in our briefs that if this is honorable court... But we're a court of review, and he didn't reach that issue. So what are we reviewing? You confirm for any reason the record. For the judicial economy, you can look at the record, you can look at all the evidence, and even if you did overturn him on the statutes and limitations, for efficiency of all the public bodies involved... Why wouldn't we remand for him to make a factual determination on damages? Because the evidence in the argument is so clear, and the case law is so clear, that all three issues should have been valid basis for dismissing the plaintiff's case. It's that clear, Judge. When we look at the kicking issue, the standard that Judge Washington... He just didn't rule on kicking one way or another. It's clear with that standard, this court can say as a matter of law, with the evidence presented, there was no kicking. With the evidence presented, there was no... If there were kicking, it wasn't reviving the renovation of the runway. And as a matter of law, the evidence produced by plaintiffs is devalued, which is zero. They produced no evidence of value. There's the self-serving statements of the homeowners who are trying to get a lot of money out of the village, versus an appraiser by the FAA appraisers that found no change in value. And the one objective person in this whole process is the appraiser who performed the nobles appraisal at the renovation when there's a refinance. And they determined that there's no impact on the runway to the value of this house. So, based on, to answer your question, this court, as a matter of law, can look at those other reasons and there are ample cases out there asking courts for judicial efficiency to rule on any issue raised and fully briefed, as this was by both sides. So, let's focus again on the damages. The FAA appraisers, or was there one? Multiple. They go through a review process to... The village initially sought to purchase air rights. We're talking about air rights. That's the only end of the issue, just air rights. Yeah, we know that. Unlike every other property case where we go home to the sky, the U.S. government owns the air rights. Right. So, yeah, there were appraisals from... An attempt was made to purchase the air rights and they couldn't come to an agreement on value, and because the plaintiffs did not produce any appraisals as needed by the FAA and IDOT to increase the value of their appraisal. So, this is about appraisals. You need appraisals, you need objective evidence, to become, for the FAA or IDOT, a preliminary type of compensation for these air rights, when there was no ability to reach an agreement where they filed that inverse kind of issue. And we're here. And when you look at that case, and we look at the discovery that was used, including their only expert, their only expert on damages is a real estate agent who did averages, who said, I'm not opining on value, express damage report, and he couldn't. He's not an appraiser. He'd be sanctioned if he tried to do that. So, he can't opine on the value to these specific homes. There is no evidence to show any damage, any change in value to these homes as a result of the runway repairs. Well, as far as the nobles are, they have an appraisal that says there isn't one. Correct. Now, in regard to the other plaintiffs... They're all neighbors. So, they're all in the same position. Okay, but it is not property-specific, as to the other plaintiffs. The only property-specific appraisals are the ones prepared by the FAA, I'd not build a home with three of those appraisals, versus this real estate report that doesn't opine on any specific property values for any of the plaintiffs, whether these plaintiffs are reporting or any of the other plaintiffs in the case. So, that's why this court can rule that there is no evidence of value other than the evidence that there is no change in value due to renovations. Well, you do have some affidavits from the plaintiffs, don't you, that they feel that there is a diminishment in the value of their home? Under the Eminent Domain Act, value must be based on paramount value. If they have objective evidence, saying, I put my house up for sale before the renovations, and they had an offer of this, so this is what the real estate agent told me, and then they tried to sell it after the renovated runaway, and it was listed lower, that's objective evidence. It's not, I want more money for my air rights amendment, so I'm going to tell you that things are worse. And, objective evidence. So, you've got subjective statements by the plaintiffs. And, Your Honor, I asked if the expert report was sworn, so I'm dodging here. It was not sworn. It was not verified. It was not submitted via an affidavit. It was not submitted via deposition testimony. So, that's not a sworn statement. Any of these statements are just discovered responses at this point. So, when this court looks at the information before you, the standards, and Judge Vlasky determined that the renovation runaway did not restart any statute of limitations, and that was enough reason for him to say, if any statute approved, or anything had been taken, it would have been back, even in the 70s, or even the latest, it would have been one to build the houses. But, that doesn't make sense. You can't build a house next to an airport and make a complaint about the airport. That's silly. That's legally impermissible. I know that it seems that part of the basis of that is based on your argument to the court that you didn't increase the types of planes that could come in, and there was less fuel being sold. But, that didn't really address the number of planes coming in, whether or not they are the same size as previously allowed, or helicopters coming in. And, the manager of the airport said he really didn't know and didn't have any way to know what the numbers were. So, how is it that you could say that they couldn't show a taping after 2015, based on the tremendous increase in width, and the augmentation of it, and I think it's even in your brief where you say that in order for it to maintain being operational at all, these things had to be done. So, even if use had dropped off, now after this renovation, which doesn't change the types of planes, but could change the amount, isn't that enough to trigger a mutation? Again, you have subjective statements by the planes versus objective evidence by the manager, who has been at this airport, being testified seven days a week, for the last 40 years. This is a recreational airport. There's no air power. They don't track incoming and outcoming flights. So, there is no document, because they don't keep those types of records for community airports. So, what this is, is the airport tracks fuel. The planes come in, they land, they fill up with fuel, they take off, they need fuel to fly, obviously. So, by tracking the fuel usage, he determined, objectively, there's been no increase since the renovations, there's been no increase in fuel sales. Similarly, there's a decrease in penance, because users will want out hangar space or grass tie downs for their recreational airports. And those actually decrease after the renovation. So, based on those objective statements, not the subjective plaintiff bias, I want more money for my easement. Those are objective facts demonstrating that the duration has not changed, the duration of aircraft. You have the circumstantial evidence, obviously, no different than plaintiffs. And that led to the conclusion, we're arguing that there is no increase in that amount of traffic. And again, you said the runway went from, it went from 50 to 75, so 25 feet, that's from here to the wall. That's the change. And when you cut that in half, when you decide it's 12 and a half. So, we're not talking about a massive increase. The runway's shorter. It's moved to the west, further away from the planes. So, the planes flew over there, the runway went that way. So, any planes that are taking off and landing, aren't even going over their house, aren't even in the tone of taking off and landing over their house. So, that's why we say that there is no change. The standard for an air rights easement is very strict, very difficult. Is it uninhabitable effectively, impractical for residential use? That's not the case. If that were the case, the banks of Frazier would set up alarms and bells saying, you can't have it, don't put a law on this house because it's uninhabitable because of the airport. Just the opposite. Well accepted neighborhood of airports. That has enough small aircraft. We're not talking Southwest Airlines that's not possible. We're talking smaller. So, that's why you do have some subjectivity of the biased planes trying to bump up the value of safety for the earth. That's going to motive and there's no place here in our determination of this case. So, let's leave that outside the door. What we're really talking about here is what is the status of these subjective affidavits, right? And are they sufficient to create an issue of material fact? They're not. They're not sufficiently stated. When you apply, even if you accept all that everything is said is true. Which we must. Which we must at the moment. Right. With the totality, but again, with summary judgment, not motion to dismiss. That's correct. So, you can consider the affidavits to afford a whole record. And when you consider the entire record, everything that's in entirety, the renovations of the runway did not increase, did not revive the statute of limitations for these planes particularly who were better off because of the runway renovations because they moved it further away from their house. So, that addresses the statute of limitations. And the ticket. Those two are kind of different. So, if the renovations didn't, even if those are accepted as true, that doesn't mean, they didn't say I can't sell my house. I tried to sell my house on the market. No one will buy it. Not one of the three planes before you said anything. That goes to damages. That goes to damages. I'm confused on whether there's a question of fact or not. The airport manager didn't have a number study. Nor do the homeowners have a number study. So, it's, their opinions are equally indefinite. Well, why doesn't that create a question of fact? Because if you had the data from fuel sales and the rentals of the Space Bomber, that is a fact. The land orders are claiming there's a difference in flight patterns and level of noise. And neither side has a concrete study that speaks for itself. So, why isn't there a question of fact on whether there was or was not a taking in 2015? Because even if you assume all those facts that the planners are saying is true, it doesn't raise the level of uninhabitable as a residential community. That's an extremely high standard. So, if you accept everything they're saying is true, and they prepared the affidavits, Council prepared the affidavits, they could say anything they want. That was true. They could have said we're trying to sell our house. Again, you've got to get objective. This can't just be subjective opinions because everyone has an opinion, right? So, look at the objective facts. The objective facts presented by Mr. Napallo about the fuel sales. You've answered my question. I appreciate it. Thank you. So, we asked this court to affirm the trial court's opinion that, ruling that this case should be dismissed for either of the three or all of the three cases is that the statute of limitations was not renewed and, therefore, if any expired years ago outside of the five-year period, that there was not... We asked you to look at the record and include as a matter of law that there was no taking, and then as a matter of law, what the evidence presented does not demonstrate any damage that would be compensable if it still was within the statute of limitations. Thank you for your time. Thank you, Mr. Fuller. Mr. Leonard, for rebuttal. Thank you. I'd just like to address a couple of points with respect to the experts. In this case, the defendant, the move for summary judgment, actually attached and adopted our expert's report in filing a motion for summary judgment. Then, in our response to their summary judgment, when we were relying upon that, which we would have anyways, they made the argument or replied with, Judge, you can't consider their expert's opinions. You shouldn't consider those. He's not credible. He's not qualified, which are those are all arguments that Judge Rossi rejected, but now it's important to also note that I raise the issue with Judge Rossi as reflected in the trial transcript, the hearing transcript, that you can't attach our expert's report and agree that he's an expert, and then when we cite to his testimony, come back in your reply brief and try to say the judge couldn't consider your expert's testimony. And I raise that specifically to Judge Rossi and said, if you're saying that we can't rely upon the expert now because of what he said in the reply brief, I want the opportunity to address it. I want the opportunity to resubmit, but we'll do whatever. He said, no, no, we're not going there. Judge Rossi specifically said, what we're doing, that will be like a motion in limine. I'm not ruling on anything about the qualifications of your expert or saying you can't rely upon it. So we'd be extraordinarily prejudiced if this court were to now say there's something improper about the form of your expert report. And in my experience, when you submit expert reports, they're not always going to have a statement at the end verifying or swearing to the report. We didn't do that in this case. I don't know of such a requirement. Tell me what the expert report that you tendered to the court addressed. Was it damages or was it taken? Just damages, yeah. The only testimony on the taking, Judge, actually, are the affidavits of the three plaintiffs which were unrebutted. They chose not to propose them. And then, of course, the only counter to that was Mr. DePaul's statement about the field sales. Okay, so that was it. So Rothbard only addressed damages. And this notion, which they put in their brief and argued to Judge Rossi, that there's some Illinois or some other standard that says you can't give an opinion in a takings case unless you're a licensed appraiser. It doesn't exist. No case law says that. It's contrary to Illinois law that one can be an expert based upon experience and qualifications. They raised that in their brief without citation to any law. Judge Rossi obviously rejected that in denying the motion on the damages portion. With respect to the appraisal report that Your Honor mentioned, the Noble report, on that issue, they didn't identify that person as an expert witness. There is a hearsay statement in there that says we think that the runaway has had no effect. That person wasn't qualified, designated, or disclosed as an expert witness at any time. We have nothing in the record that goes to their qualifications, their experience, any reason why they should be considered an expert by this court. Well, was it a licensed appraiser? I don't know. I'm not saying he wasn't. I have no knowledge one way or the other whether he was a licensed appraiser. I don't know the answer, Judge. And there's nothing in the record that can answer that question. With respect to counsel's characterization of federal Illinois case law that the standard is uninhabitable, that's not true. Clause B from the Supreme Court of the United States and most of the cases from the Illinois Supreme Court don't say it has to be uninhabitable. It has to be an egregious interference with your use of the property, which is always a fact question. Every airport takings case involves testimony by claimants as to what impact those planes flying at low heights have upon me, my property, my use and enjoyment land. Every single case. That's not a question for an expert. That's a fact witness testifying to their own observations and how that ruins their life and how that ruins their home. And then with on this fuel question, DePaulo was asked, and this is in the record on page C-122, which is page 87 of his deposition, about this one strand of testimony. The question was, so hypothetically, if 50 planes landed on June 7th of 2016 and didn't purchase any fuel, that wouldn't tell us very much about the activity above the airport, would it? Answer, no. Of course it doesn't. And his testimony on fuel sales does not counterbalance the plaintiff's unrebutted testimony that's fact-based. At best, it gives us a question of fact that's not appropriate to resolve in summary judgment. I appreciate all your time. Is that your argument, that there is a question of fact and summary judgment should not have been resolved? Or is your argument that there was clear evidence, undisputed evidence of the taking in 2015? Oh, absolutely, Judge. I need to understand what your arguments are. We didn't move for summary judgment, so I'm not asking you to grant us summary judgment. All right. That helps. But the judge did on that one prong of the three arguments on statute of limitations grounds. He did find in her paper, which on the other two issues, he's unwilling to say that so obviously there's a tenuous effect on his mind. But we don't agree. If you could give us the relief of granting summary judgment... But I just wanted to understand your point. We would agree if that would be a great result, Judge. We think that would be appropriate based on this record. We never asked for it. We weren't to move it. So we're defending or trying to defend against a summary judgment. Thank you. All right. Thank you both for your arguments here today. This matter will be taken under advisement. A written decision will be issued to you as soon as possible.